IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


DENNIS DAVENPORT,                )
                                 )
          Petitioner,            )
                                 )
     v.                          )   Crim. No. 00-033-SLR
                                 )   Civ. No. 04-092-SLR
                                 )
UNITED STATES OF AMERICA,        )
                                 )
          Respondent.            )

---

Dennis Davenport, pro se, for Petitioner, Federal Correctional
Institution Williamsburg, Salters, South Carolina.

Colm F. Connolly, United States Attorney and Richard Andrews,
Assistant United States Attorney, United States Attorney's
Office, Wilmington, Delaware.   Counsel for Respondent.

---

**MEMORANDUM OPINION**


Dated:  September 7, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I.  INTRODUCTION

Petitioner Dennis Davenport is a federal inmate currently in custody at a federal correctional institution in Salters, South Carolina.  Before the court is petitioner's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  (D.I. 59)  Petitioner has also moved the court to set bond for his release and for an evidentiary hearing.  (D.I. 60, 61)  Respondent United States of America has filed its opposition.  (D.I. 66, 67)  The court has jurisdiction pursuant to 28 U.S.C. § 2255.  For the reasons that follow, petitioner's applications for relief are denied.

## II.  BACKGROUND

On January 6, 2000, a cooperating individual ("CI") acting at the direction of the Drug Enforcement Agency ("DEA") placed a series of monitored telephone calls to petitioner and negotiated the purchase of approximately 5.5 ounces of crack cocaine for $5,000.  (D.I. 58); see United States v. Davenport, 2003 WL 149895 (3d Cir. 2003).  During these calls, petitioner said he would "cook" the cocaine from cocaine powder that he kept at his

---

[1]Prisoners in federal custody may attack the validity of their sentences via 28 U.S.C. § 2255.  Section 2255 is a vehicle to cure jurisdictional errors, constitutional violations, proceedings that resulted in a "complete miscarriage of justice," or events that were "inconsistent with the rudimentary demands of fair procedure."  United States v. Timmreck, 441 U.S. 780, 784 (1979).  See also U.S. v. Addonizio, 442 U.S. 178 (1979); United States v. Essig, 10 F.3d 968 (3d Cir. 1993).

residence.  Subsequently, the CI went to petitioner's residence
and paid $5,000 for approximately 153.2 grams of crack cocaine.

Between February 15, 2000 and February 17, 2000, petitioner
and the CI had additional monitored telephone conversations and
met again at petitioner's residence.  During those conversations,
the CI negotiated the purchase of about nine ounces of crack from
petitioner at a price of $1,050 per ounce.  On March 3, 2000, the
CI and petitioner had another monitored telephone conversation
wherein petitioner stated that he had the nine ounces of crack
and would sell it at his residence later that day.

At about 5:00 p.m. on March 3, 2000, DEA agents arrested
petitioner several blocks away from his residence.  Shortly
thereafter, DEA agents entered petitioner's residence without a
warrant.  Before searching, however, they waited for confirmation
that attempts were being made to secure a search warrant.  After
being advised that the warrant had been issued, the agents began
to search the residence.  Inside petitioner's kitchen, agents
found:  (1) 240.8 grams of crack cocaine; (2) approximately 125
grams of powder cocaine; (3) a digital scale; (4) a pot
containing cocaine residue; (5) a case for a handgun; and (6) a
magazine for a .9mm handgun.  The magazine fit a .9mm handgun
that agents found in petitioner's second floor bedroom.

Based on the search and investigation, a federal grand jury
returned a three count indictment charging petitioner with:  (1)

2

distribution of cocaine base, in violation of 21 U.S.C.
§§841(a)(1) and (b)(1)(A); (2) possession with intent to
distribute cocaine base, in violation of 21 U.S.C. 841(a)(1) and
(b)(1)(A); and (3) possession with intent to distribute cocaine,
in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

Petitioner filed various pretrial motions, including a
motion to suppress evidence seized during the search of his
residence. (D.I. 13-17) Because police entered his home without
a warrant and without exigent circumstances, petitioner argued
that all the evidence seized was "fruit" of an illegal search
that was tainted and had to be suppressed. (D.I. 24) Moreover,
petitioner argued that the warrant that was obtained after the
agents had illegally entered his residence did not cleanse the
bad search. He further suggested that agents had nearly an hour
to search and/or plant evidence before the warrant was issued.
After briefing, the court denied petitioner's suppression motion.
(D.I. 30) The court found that, even assuming the initial
warrantless entry was illegal, the evidence was admissible
nonetheless under the independent source doctrine. Segura v.
United States, 468 U.S. 796 (1984). In response to the
suggestion of evidence tampering, the court scheduled a hearing
to give petitioner the opportunity to present evidence to support
this claim.

3

On September 28, 2000, petitioner advised that the scheduled evidentiary hearing was unnecessary because he "had no evidence to proffer demonstrating that DEA officers planted or tampered with evidence, and none would be expected." (D.I. 32)  On October 18, 2000, respondent filed a proposed plea agreement and requested the scheduling of a change of plea hearing. (D.I. 34)

On October 26, 2000, petitioner entered a guilty plea to Count II of the indictment. (D.I. 35, 36)  The plea agreement contained a stipulation as to the weight and identity of the controlled substances attributable to petitioner.[2]  (D.I. 35)  It was agreed that 394 grams of crack cocaine base and 125 grams of powder cocaine were the correct drug quantities.  To that end, during the plea colloquy the court emphasized the weight of the drugs involved in count II and specifically stated that the drug

---

[2]Specifically, the plea agreement stated:
> The defendant knowingly, voluntarily, and intelligently admits that on or about March 3, 2000, he knowingly possessed with the intent to distribute more than 50 grams of the "crack" form of cocaine base, a Schedule II narcotic controlled substance.

> The defendant knowingly, voluntarily, and intelligently admits, and the parties knowingly, voluntarily, and intelligently stipulate that the following quantities of controlled substances are attributable to the defendant for sentencing on count II of the indictment as a matter of relevant conduct:  394.0 grams of the "crack" form of cocaine base, and 125.0 grams of powder cocaine.

(D.I. 35 at ¶ 2, 3)

4

in issue was crack cocaine.  (D.I. 67, Ex. G at 14)   Petitioner

never objected to the weight of the drug or the type of drug.

(Id. at 16-19)

At sentencing, petitioner requested a hearing on the

identity of the controlled substance attributed to him.  (D.I.

67, Ex. I)  The following exchange occurred:

> THE COURT:  All right.  With respect to the
> cocaine, it is my understanding and was mine
> during the plea that the [petitioner] agreed to
> and stipulated to the amount of drugs and the
> nature of the drugs.  And unless I'm mistaken
> in that, I do not believe that the [petitioner]
> would be entitled to an evidentiary hearing
> disputing what he in fact agreed to before.
> COUNSEL:  Well, your Honor, to avoid the
> possibility of ineffective assistance of counsel,
> I believe 2255, your Honor, I had to object to
> those particular matters.  However, your Honor,
> we have to take into consideration the fact that
> the [petitioner] pled guilty to whatever was found
> in the house.  He didn't know what the contents of
> it was until the announcement was done.  And that
> is in dispute, the fact that it was not the
> enhancement that is required by the court system.
> As far as enhancement, it wasn't proven to be
> cocaine, which is sodium hydroxide with it, baking
> soda that creates crack.  In this particular instance,
> your Honor, in reading the lab reports, it says
> benzocaine, sodium benzocaine.  That is not sodium
> hydroxide.
> THE COURT: Well, I guess I have two questions.
> Number one-
> COUNSEL:  What constitutes crack is the
> question.
> THE COURT:  No, that's not the question.  The
> procedural question is whether the lab reports
> were available before the plea.  And, quite frankly,
> I'm not going to go forward with sentencing at all
> and we'll have a trial because if in fact this
> information was available, if in fact the [petitioner]
> agreed to these amounts, then as far as I'm concerned,
> the plea agreement goes out the window.  I'm not

going to have an evidentiary hearing. I'm saying
we're either going to go to trial or the [petitioner]
is going to abide by his plea agreement.
COUNSEL:  Okay. I will have to discuss that
with the [petitioner], your Honor.
COUNSEL:  Your Honor, as the court is aware, I
was not present during the plea hearing.  Mr.
Prettyman covered that proceeding for us.  I am
advised by the agents that the lab reports were
provided to the [petitioner] through counsel
at the plea hearing and that they were reviewed
prior to the court coming on the bench and the
result of that was the change as the court has
seen in the plea agreement to the net weights of
the drugs that were involved, I believe, which is
in paragraph 2 or paragraph 3 of the memorandum
of plea agreement.  There was a handwritten change
to the weights.
THE COURT:  All right.  I don't happen to have that.
COUNSEL:  I have an additional copy, your Honor,
which I will hand up to the court at this time,
referring to paragraph 3 of the plea agreement.
THE COURT:  All right.
COUNSEL:  Handwritten notations by Mr. Prettyman
and Mr. Crawford.
          (Documents passed forward)
COUNSEL:  Yes, Ma'am. Your Honor, I still– and
what your Honor said earlier, the fact that we
were here for a plea agreement, the other attorney
was here at the time and there was some changes
that were made, it that what you're talking about?
COUNSEL:  (Nodding yes)
COUNSEL:  At that time, we did in fact sign
the plea agreement amendment, but the law in <u>United
States v. Johnson</u> says the government still has
the burden of proving by a preponderance of the
evidence that the drugs that were attributed to
the [petitioner] were crack cocaine for the purpose
of guidelines.  I have a case right here, your
Honor.
THE COURT:  I understand that.  But then this
goes out the window because, as far as I'm
concerned, you agreed that is what it was you
were pleading guilty to, and what was involved
in the case.  And that's why the government has
agreements, to avoid evidentiary hearings, and
the use of judicial resources.  So you can talk
to your client about it.  If he wants to throw

6

> the plea out the window, we'll start from scratch
> and we'll schedule a trial today.  Otherwise,
> we'll go with a evidentiary hearing about the gun
> of which I have some concerns.
>                         (recess taken)
> THE COURT:  I did review the case that Mr. Crawford
> furnished.  Again, that was distinguishable on the
> facts where the [petitioner] said it was admitted it
> was known as crack on the street.  He had looked at
> lab reports and unequivocally preserved his right
> to appeal or to contest the issue at sentencing.
> As far as I now, none of that happened here.  So
> I am unpersuaded this is different.

(D.I. 67, Ex. I at 9-10)

Petitioner advised the court that he wanted to proceed to sentencing, but then contested the application of an upward adjustment based on his possession of a firearm during the course of the offense conduct.  Petitioner argued that he had not agreed to the enhancement in the plea agreement.  Respondent contended the enhancement was appropriate and called Wilmington police detective Henry Cannon to testify.  (Id. at 14)  Cannon testified as to the location of the gun and drugs.  He also indicated that petitioner and another person leased the residence.  (Id. at 25) No other witnesses were called.

After hearing testimony and argument, the court found that respondent had carried its burden of proof and imposed the two level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1).  Petitioner was sentenced to 168 months of incarceration, the low end of the guideline range.  (Id. at 44; D.I. 50)

Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Third Circuit.  (D.I. 49) He raised five issues on appeal:  (1) whether the court erred in denying his motion to suppress; (2) whether the court erred in attributing possession of the firearm to petitioner; (3) whether the government adequately demonstrated that the substance at issue was "crack" cocaine; (4) whether the court erred in calculating the amount of "crack" cocaine attributable to defendant; and (5) whether the court "coerced" petitioner into either acknowledging that he possessed "crack" cocaine or withdrawing his guilty plea.  (D.I. 58)  On January 22, 2003, the Third Circuit denied all of petitioner's claims and affirmed the judgment of this court.  (D.I. 57, 58)

On February 9, 2004, petitioner filed this pro se motion to vacate under 28 U.S.C. § 2255.  (D.I. 60)  Respondent filed its response memorandum on April 28, 2004.  (D.I. 66, 67)  By order dated January 14, 2005, the court directed the parties to address whether United States v. Booker, ___ U.S. ___, 125 S.Ct. 738 (2005) affected petitioner's claims at bar.  (D.I. 68) Petitioner filed his arguments on February 25, 2005, to which respondent filed opposition on February 28, 2005.  (D.I. 69, 70)

**III. DISCUSSION**

   **A.  Evidentiary Hearing**

8

Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the court has reviewed petitioner's motion, respondent's answer and the parties' supplemental responses, as well as the record, and concludes that an evidentiary hearing is not required.  United States v. McCoy, 410 F.3d 124, 131 (3d Cir. 2005)(denying a petitioner's request for an evidentiary hearing is an abuse of discretion when files and records of case conclusively establish movant is entitled to relief).  Instead, the court can evaluate the issues on the record presented. Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)(evidentiary hearing not required where petition and record demonstrate that petitioner was not entitled to relief and that decision to hold hearing is in sound discretion of court).

### B.   Ineffective Assistance of Counsel

Petitioner contends his attorney provided ineffective assistance of counsel at the sentencing hearing.  (D.I. 59)   To establish an ineffective assistance of counsel violation, a petitioner must satisfy the two-prong standard announced in Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must demonstrate that counsel's advice was unreasonable and was not within the range of competence demanded of attorneys in criminal cases.  Id. at 690; Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Wiggins v. Smith, 539 U.S. 510, 520 (2003).  The defendant must overcome the "strong presumption that

9

the counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689.

Second, a defendant must demonstrate "prejudice," meaning that there is a "reasonable probability" that the deficient assistance of counsel affected the result of the proceeding in issue. Id. at 694; Rompilla v. Beard, __ U.S. __, 125 S.Ct. 2456, 2467 (June 6, 2005)(question becomes: is there a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir. 1992). Petitioner must show that his attorney's errors rendered the proceeding fundamentally unfair or unreliable. Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). An outcome determinative perspective is inappropriate. Id.; Flamer v. State of Delaware, 68 F.3d 710, 729 (3d Cir. 1995).

Petitioner argues that his attorney was "ambushed" by the court's refusal to conduct an evidentiary hearing on the drug issue and, as a result, failed to argue that the government had not proven that the drugs in issue were crack cocaine. (D.I. 59 at 8) Respondent counters that petitioner cannot establish that any prejudice resulted from his counsel's alleged errors. (D.I. 67)

10

The sentencing record reflects that petitioner's counsel informed the court that an evidentiary hearing was required to determine the type and the amount of drugs in issue for purposes of sentencing. (D.I. 67 at I, at 4)  Although defense counsel argued that prevailing Third Circuit caselaw mandated a hearing to determine the amount and type of drug, the court interpreted the authority differently and, as observed by the Third Circuit on direct appeal, correctly.  In light of these circumstances, defense counsel's representation was not unreasonable or below the range of conduct established for defense attorneys.  Morever, considering the Third Circuit's affirmation of the court's rulings, the second element of <u>Strickland</u> - prejudice- is absent.

Petitioner's second claim of ineffective assistance of counsel relates to the gun enhancement.  Petitioner argues that his attorney failed to properly investigate and call witnesses to demonstrate that the .9mm gun did not belong to him.  Respondent counters that defense counsel's decision not to call additional witnesses to demonstrate that others lived in the house was reasonable and would not have negated the application of the gun enhancement.  Specifically, because the Third Circuit found the gun enhancement appropriate based on factors unrelated to whether others lived or leased the home, respondent contends no prejudice resulted from counsel's decision not to call additional witnesses. <u>United States v. Davenport</u>, 2003 WL 149895 at *5.

11

The court agrees.  Defense counsel's representation does not
implicate either prong of <u>Strickland</u>.

   **C.   Substantive Claims**

   Petitioner contends that:  (1) his Fourth Amendment rights
were violated by the search of his home; (2) the court erred in
attributing a firearm to him at sentencing; (3) he was pressured
into entering and abiding by the terms of his plea agreement; and
(4) the court erred in calculating the amount of crack cocaine
attributable to petitioner at sentencing.  All of these claimed
errors were reviewed and rejected by the Third Circuit on direct
appeal.  (D.I. 57, 58)

   It is uncontroverted that a petitioner may not relitigate a
claim under § 2255 where the claim was raised and decided on
direct appeal.  <u>United States v. DeRewal</u>, 10 F.3d 100, 105 n. 4
(3d Cir. 1993); <u>United States v. Handy</u>, 2001 WL 652020 (D. Del.
2001) at *1.  Relitigation of a claim considered at the original
trial and on direct appeal is barred unless:  (1) there is newly
discovered evidence that could not reasonably have been presented
at the original trial; (2) a change in applicable law; (3)
incompetent prior representation by counsel; or (4) other
circumstances indicating that an accused did not receive full and
fair consideration of his federal constitutional and statutory
claims."  <u>United States v. Palumbo</u>, 608 F.2d 529, 533 (3d Cir.
1979); <u>see generally</u> <u>United States v. Swinehart</u>, 617 F.2d 336 (3d

12

Cir. 1980); <u>United States v. Orejuela,</u> 639 F.2d 1055, 1057 (3d
Cir. 1981).  Because these issues were fully considered by the
Third Circuit and there are no factors compelling post conviction
review, the court declines to review the claims again.

   **C.   United States v. Booker[3]**

   The court requested clarification from the parties as to
what effect, if any, the Supreme Court's decision in <u>United
States v. Booker</u>, ___ U.S. ___, 125 S.Ct. 738 (2005), has on
petitioner's sentence.  In <u>Booker</u>, the Supreme Court held that
"the Sixth Amendment as construed in <u>Blakely</u> does apply to the
[Federal] Sentencing Guidelines."  125 S.Ct. at 746.  <u>Booker</u> was
decided by two opinions of the Court approved by different
majorities.  <u>Id.</u>  The first opinion, authored by Justice Stevens,
reaffirmed the Court's holding in <u>Apprendi</u> that "[a]ny fact
(other than a prior conviction) which is necessary to support a
sentence exceeding the maximum authorized by the facts
established by a plea of guilty or a jury verdict must be
admitted by the defendant or proved to a jury beyond a reasonable
doubt."  <u>Id.</u> at 756.  In the second opinion, authored by Justice
Breyer, the Court held that 18 U.S.C. § 3553(b)(1), the provision
of the Sentencing Reform Act of 1984 which made the Guidelines
mandatary, was incompatible with the Court's constitutional

---

[3]The court addresses this argument although, under the facts
of this case, petitioner admitted certain facts through the plea
agreement.

ruling and, therefore, the Court severed §§ 3553(b)(1) and
3742(e).  The "net result was to delete the mandatory nature of
the Guidelines and transform them to advisory guidelines for the
information and use of the district courts in whom discretion has
now been reinstated."  <u>United States v. Ordaz</u>, 298 F.3d 236, 239
(3d Cir. 2005); <u>In re Olopade</u>, 403 F.3d 159 (3d Cir. 2005).  On
April 11, 2005, the Third Circuit held that the rule of <u>United
States v. Booker</u>, which extended the rule of <u>Apprendi</u> to the
Federal Sentencing Guidelines, was not retroactively applicable
to cases on collateral review.  <u>In re Olopade</u>, 403 F.3d at 159.
In so doing, the Third Circuit noted that the Supreme Court has
held that "a new rule is not made retroactive to cases on
collateral review unless the Supreme Court holds it to be
retroactive."  <u>Tyler v. Cain</u>, 533 U.S. 656, 663 (2001).  This is
accomplished by the Supreme Court explicitly holding so or "where
two or more of its decision when read together . . . absolutely
dictate, that a particular rule is retroactively applicable to
cases on collateral review."  <u>In re Olopade</u>, 403 F.3d at 162.

The Supreme Court has not expressly held that <u>Booker</u> is
applicable to cases on collateral review.  <u>Id.</u> at 163-164.  In
fact, <u>Booker</u> itself was decided on direct appeal and did not
expressly declare that its holding should be applied
retroactively to cases on collateral review.  Moreover, "there is
no combination of Supreme Court cases that 'dictates' that <u>Booker</u>

14

has retroactive force on collateral review." Id.; accord Varela
v. United States, 400 F.3d 864, 868 (11th Cir. 2005); Bey v.
United States, 399 F.3d 1266, 1269 (10th Cir. 2005); Humphress v.
United States, 398 F.3d 855, 860 (6th Cir. 2005); Green v. United
States, 397 F.3d 101, 103 (2d Cir. 2005); McReynolds v. United
States, 397 F.3d 479, 481 (7th Cir. 2005).  In light of this
precedent, the Supreme Court's Booker decision is inconsequential
to petitioner's claims.

## IV.  CONCLUSION

For the reasons stated, petitioner's application for relief
is denied.  An appropriate order shall issue.